<u>NOT FOR PUBLICATION</u>

<div style="border:1px solid black; text-align:center;">

**FILED**

JAMES J. WALDRON, CLERK

**APRIL 7, 2008**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: <u>s/ Ronnie Plasner,</u> DEPUTY

</div>

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In Re:<br><br>NEW JERSEY MOBILE DENTAL<br>PRACTICE, P.A.,<br><br>     Debtor. | Case No.:   05-17772 (DHS)<br><br>Adv. No.:   07-1988 (DHS)<br><br>Judge: Donald H. Steckroth, U.S.B.J. |
| NEW JERSEY MOBILE DENTAL<br>PRACTICE, P.A.**,**<br><br>     Plaintiff**,**<br><br>  v.<br><br>CONTINENTAL ASSOCIATES LTD. and<br>RICHARD GASSNER,<br><br>     Defendants. |  |

**<u>OPINION</u>**

**APPEARANCES:**

Trenk, DiPasquale, Webster, Della Fera & Sodono,
P.C.
Thomas M. Walsh, Esq.
347 Mount Pleasant Avenue
Suite 300
West Orange, New Jersey 07052
***Counsel for Plaintiff***
***New Jersey Mobile Dental Practice, P.A.***

Stuart Jon Bierman, Esq.
27 Warren Street
Suite 301
Hackensack, New Jersey 07601
***Counsel for Defendants***
***Continental Associates Ltd.***
***and Richard H. Gassner***

## THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE

Before this Court is a motion for summary judgment filed by New Jersey Mobile Dental Practice, P.A. (hereinafter "Plaintiff" or "Debtor") seeking to avoid post-petition transfers and receive a refund pursuant to Sections 549 and 550 of the Bankruptcy Code.  Specifically, Debtor contends: (i) the transfers were not in the ordinary course of its business or on the authority of the Court, and thus, should be avoided and (ii) the Defendants do not have an unjust enrichment defense because of their failure to demonstrate services performed for the Debtor.

Continental Associates Ltd. (hereinafter "Continental") and Richard Gassner (collectively referred to as "Defendants") submitted a certification in opposition arguing that: (i) the Defendants conferred a benefit upon the Debtor by facilitating a loan modification; (ii) Stephen Beukas, principal and sole owner of the Debtor, used the corporation as his "alter ego;" (iii) the Debtor should collect directly from Beukas; and (iv) Gassner had no knowledge of bankruptcy law and was unaware that the transfers might violate the Bankruptcy Code.

For the reasons that follow, summary judgment is granted in favor of the Debtor.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(E).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## Statements of Fact and Procedural History

**A.      Plaintiff's Statement of Facts**

On March 13, 2005, Debtor filed a Chapter 11 bankruptcy petition. *Certification of Dr. Stephen Beukas in Support of Plaintiff's Motion for Summary Judgment ("Beukas Cert.")* at ¶3. The Debtor is a professional association operating a mobile dental practice in the State of New Jersey. *Beukas Cert.*, Exhibit A.  Between January 12, 2007 and February 24, 2007, the Debtor, through Dr. Stephen Beukas, the Debtor's principal, made eight transfers totaling $32,500 to Richard Gassner, whom Debtor met in or around November 2006. *Beukas Cert.* at ¶¶1, 4, 5.  Defendants admitted that the funds were received post-petition. *Beukas Cert.* at ¶6, Exhibit B & C.

Beukas's alleged intention in making the transfers was to obtain a personal loan from the Defendants for approximately $1,000,000 secured by real property in Vermont and New Jersey. *Beukas Cert.* at ¶7.  Upon receiving the loan, Beukas purportedly intended to provide a portion of the loan proceeds to the Debtor to support the confirmation of the Debtor's Chapter 11 reorganization plan. *Beukas Cert.* at ¶8.  However, the Debtor asserted that the Defendants failed to provide such loan or any other financing in return for the $32,500 transfer. *Beukas Cert.* at ¶9. Defendants have not demonstrated any benefit to the Debtor using evidentiary support. *Beukas Cert.* at ¶13.

On August 6, 2007, the Debtor filed the instant adversary complaint against both Defendants seeking to avoid and recover post-petition transfers pursuant to Section 549 and 550. *Beukas Cert.,* Exhibit A.  Thereafter, both Defendants submitted their responses to Debtor's Requests for Admissions. *Beukas Cert.*, Exhibit B & C.  On September 27, 2007, Defendants filed their Answer, Counterclaims, and Third-Party Complaint against Beukas. *Beukas Cert.*, Exhibit E.

4

B.      **Defendants' Disputed and Additional Facts**[1]

Richard Gassner is the principal and owner of Continental Associates Ltd, the two named defendants in this action. *Certification of Richard Gassner in Opposition to Plaintiff's Motion for Summary Judgment ("Gassner Cert.")* at ¶1.  In contrast to Debtor's assertion that no valuable services were received, Gassner argued that he was paid $32,500 to get a loan modified or reinstated in order for Beukas to avoid foreclosure on his real property in Vermont that was worth approximately $2,000,000. *Gassner Cert.* at ¶3.  The purpose of removing the Vermont property from foreclosure was to use the property as collateral to secure a loan that would enable the Debtor to emerge from bankruptcy. *Id.*  This loan would enable the Debtor to pay off the creditors including the Internal Revenue Service and the New Jersey Division of Taxation. *Id.*

Gassner worked with Wells Fargo, the lender that instituted the foreclosure proceedings, to obtain a loan modification and to remove the Vermont property from foreclosure, despite the Debtor's Chapter 11 proceeding, Beukas's poor credit rating, and various liens on Beukas's home. *Gassner Cert.* at ¶4.  Gassner provided evidence of Beukas's intentions for the loan proceeds, which Gassner indicates would have been beneficial to the Debtor as they would pay off debts owed to creditors. *Id.*  Specifically, Beukas faxed a letter to Gassner detailing how the loan proceeds would be used and that a second loan would be obtained using the Vermont property as collateral. *Gassner Cert.* at ¶8.

---

[1] Defendants failed to submit a Statement of Material Facts in accordance with Local Civil Rule 56.1. Instead, Defendants provided a recitation of the facts in the *Certification of Richard Gassner in Opposition to Plaintiff's Motion for Summary Judgment.* Since Defendants failed to comply with the Local Rule, all facts in Debtor's Rule 56.1 statement are hereby deemed admitted "unless controverted in [the] briefs or contradicted by the evidence." *Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001).

Gassner further contended that Beukas is the principal and sole owner of the Debtor and that the Debtor served as a "corporate alter ego."  Gassner cited examples of the intermingled affairs of the Debtor and Beukas: (i) Beukas wrote checks out of the Debtor's account to pay Gassner; (ii) Beukas's personal assets were subject to liens and encumbrances caused by his financial mismanagement of the Debtor and the Debtor-in-Possession; and (iii) Beukas's wife received payment from the Debtor's payroll without providing any compensable services. *Gassner Cert.* at ¶5.

Gassner admitted that Beukas informed him of the Debtor's bankruptcy filing. However, Gassner contended that he had no knowledge of Beukas's use of improper checking accounts to pay for Gassner's services. *Gassner Cert.* at ¶11.  Given Beukas's other debts, Gassner argued that Beukas was only paying him because the services provided by Gassner were necessary for the loan modification. *Gassner Cert.* at ¶12.  Gassner argued that the Debtor should recover the $32,500 from Beukas, not Gassner, since the Debtor is the "corporate alter ego" of Beukas. *Gassner Cert.* at ¶14.

Gassner disputed Beukas's statement that Gassner was to provide the $1,000,000 loan personally. *Gassner Cert.* at ¶16.  Gassner made rather clear that he is not in a financial position to make that loan and intends to cross-examine Beukas at trial as to that assertion. *Id.*  Gassner also reasoned that payment from the Debtor's accounts was proper because the loan modification benefitted or will benefit the Debtor. *Gassner Cert.* at ¶17.  Gassner stated that Beukas also asserted in his *Certification* that the Defendants have not obtained any financing for the Debtor. However, Gassner defended this statement by pointing to Beukas's ability to use the Vermont property as collateral to secure financing that would benefit the Debtor. *Gassner Cert.* at ¶¶20-21.  In fact,

6

Gassner and his colleague are currently helping the Debtor and Beukas to obtain such financing. *Gassner Cert.* at ¶21.

Gassner finally argued that he justifiably relied upon Beukas's actions and that Beukas should be estopped from denying that he utilized the incorrect account to pay Gassner. *Gassner Cert.* at ¶25. Additionally, Gassner is in the field of mergers and acquisitions and does not practice law, despite having graduated from law school. Therefore, he disputed Beukas's claim that Gassner was a lawyer with knowledge of bankruptcy law. *Gassner Cert.* at ¶26.

## Legal Analysis

### A.     Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

7

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*,

8

673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted).  On the other hand, a court must deny

a motion for summary judgment when a genuine issue of material fact remains to be tried, or where

the moving party is not entitled to a judgment as a matter of law.

**B.**    **Section 549 – Avoidance of Post-Petition Transfers**

Section 549 provides the Trustee or the debtor-in-possession with the power to avoid post-

petition transfers that are not authorized by the Bankruptcy Code or by the Bankruptcy Court. 11

U.S.C. § 549(a) (2008); *see Wasserman v. Bressman (In re Bressman)*, 327 F.3d 229, 235 (3d Cir.

2003).  In pertinent part, Section 549 states:

> (a) Except as provided in subsection (b) or (c) of this section, the
> trustee may avoid a transfer of property of the estate--
>> (1) that occurs after the commencement of the case; and
>> (2)    (A) that is authorized only under section 303(f) or
>>        542(c) of this title; or
>>        (B) that is not authorized under this title or by the
>>        court.

11 U.S.C. § 549(a) (2008).  If a transfer is avoidable under Section 549(a), then Section 550(a)

allows the debtor-in-possession to recover the property at issue or its value from the initial or

subsequent transferee. 11 U.S.C. § 550(a) (2008); *see ETS Payphones, Inc. v. AT&T Universal Card
(In re PSA, Inc.)*, 335 B.R. 580, 584 (Bankr. D. Del. 2005).  The purpose of Section 549 "is to allow

the trustee  [or debtor-in-possession] to avoid those postpetition transfers which deplete the estate

while providing limited protection to transferees who deal with the debtor." *Id.*

The trustee or debtor-in-possession bears the burden of proving avoidable post-petition

transfers under Sections 549 and 550. *Id.*  To avoid a transfer, the debtor-in-possession must

demonstrate that the following occurred: "(1) a transfer; (2) of property of the bankruptcy estate; (3)

that occurs after the commencement of the bankruptcy case; and (4) that was not authorized by any

9

provision of the Bankruptcy Code or by order of the bankruptcy court." *Official Comm. of Unsecured Creditors v. Forman (In re Forman Enterprises, Inc.)*, 281 B.R. 600, 611 (Bankr. W.D. Pa. 2002); *see In re PSA, Inc.*, 335 B.R. at 585. Here, it is undisputed that transfers of property of the estate totaling $32,500 occurred post-petition without this Court's authorization.

The Section 549 powers are subject to narrow exceptions. The enumerated exceptions within Section 549 include subsection (b), which applies only in involuntary cases, and subsection (c), which involves transfers of real property to good faith purchasers. 11 U.S.C. § 549; *see In re PSA, Inc.*, 335 B.R. at 585. These are inapplicable to the instant matter. Additionally, Section 550(b) provides protection for subsequent good faith transferees lacking knowledge. Again, this provision is not available to the instant matter. *See id.*

Here, the Debtor-in-Possession argued a non-enumerated exception developed through case law where the post-petition transfers at issue are avoidable because they did not occur in the Debtor's "ordinary course of business." Section 363(b)(1) gives rise to a Section 549(a)(2)(B) action because "absent notice and a hearing, a transaction outside the ordinary course of business is avoidable. . ." *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 n.14 (Bankr. D. Del. 2007). Section 363(b)(1) allows the debtor-in-possession to use, sell or lease property of the estate outside of the ordinary course after notice and a hearing. *See id.* at 796. Section 363 allows the debtor-in-possession (or the trustee) to exercise its business judgment in conducting day-to-day affairs, providing "the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary." *Id.* at 796 (citing *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992)); *see Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.)*, 325 B.R. 138,

145 (Bankr. D. Del. 2005). Here, the Debtor made transfers without court approval. Thus, the crux of this case is whether these transfers were in the ordinary course of the Debtor's business.

When analyzing "ordinary course of business," the Third Circuit adopted a two-step approach consisting of a horizontal and a vertical dimension. *See In re Roth Am.*, 975 F.2d at 953. The horizontal dimension considers "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." *In re Nellson Nutraceuticals, Inc.*, 369 B.R. at 797 (citing *In re Roth Am.*, 975 F.2d at 953). The vertical dimension, also known as the "creditor's expectation test," "analyzes the transaction from the vantage point of a hypothetical creditor and the inquiry is whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Id.* (citing *In re Roth Am.,* 975 F.2d at 953). Typically, this analysis consists of "the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of business." *Id.* (citing *In re Roth Am.*, 975 F.2d at 953). Finally, the Court "must also consider the changing circumstances inherent in the hypothetical creditor's expectations." *Id.* (citing *In re Roth Am.*, 975 F.2d at 953) (quotations omitted).

Utilizing the Third Circuit's two-step inquiry, this Court must first analyze whether the transaction between the Debtor and the Defendants was of the type commonly undertaken in the mobile dental industry. The Court must then consider whether this transaction is one which the creditors would expect both pre-petition and post-petition. Here, the Debtor's principal made post-petition transfers to Richard Gassner in an effort to secure a loan modification that would provide the Debtor with the ability to emerge from bankruptcy by using the loan proceeds to pay its creditors.

11

The Debtor argued that the horizontal dimension was not met because these post-petition transfers were extraordinary.  Specifically, Debtor contended that personal expenses of dental partners are not paid out of partnership funds and dental practices do not pay "points" when obtaining personal loans.  Further, refinancing of personal property to provide funds to the practice is out of the ordinary course of business.  With regards to the vertical dimension, Debtor noted that Defendants demonstrated apprehension and sought assurances that these transfers were proper, thus, not fulfilling the second step of the inquiry.

In opposition, the Defendants relied upon the defenses of unjust enrichment, unclean hands, and estoppel.  Defendants also asserted that they conferred a benefit upon the Debtor and its principal and, therefore, are entitled to retain the $32,500.  However, Defendants have not opposed Debtor's argument that these transfers were not in the ordinary course.  Instead, they maintain that issues of fact exist as to the benefits received by the Debtor and its principal.  Neither the benefits of the transfers nor the Defendants' reliance on Beukas's statements are elements of a Section 549 claim.

Therefore, while this loan might have been crucial to the Debtor's continued operations, it seems implausible that this loan arrangement between the Debtor and the Defendants is an ordinary business practice in the mobile dental industry, let alone an ordinary practice from the creditors' perspective.  As evidenced, the horizontal and vertical dimension tests have not been met, and thus, the Debtor's conduct was not ordinary under Section 363.  *But see, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 797 (modifying an employee bonus compensation plan was consistent with debtor's pre-petition practices and the creditors' reasonable expectations); *In re Vision Metals, Inc.*, 325 B.R. at 144-45 (entering into a second agreement for maintenance and repair of facilities subject to a

previous agreement is an ordinary business practice and one which creditors should expect without notice and Court approval).  Since these post-petition transfers fall outside of the ordinary course of business, a Section 549 claim exists here.

By demonstrating that the post-petition transfers were not in the ordinary course of business and not approved by the Court, the Debtor-in-Possession fulfilled its burden on its Section 549 avoidance claim.  Thus, the Debtor's motion for summary judgment is hereby granted and in accordance with Section 550(a)(1), the Debtor-in-Possession may recover $32,500 from the Defendants.

## Conclusion

For the reasons stated above, Debtor's motion for summary judgment is hereby granted.  An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

/s/ Donald H. Steckroth

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: April 7, 2008